Filed 5/12/23  P. v. Boullard CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B322987 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA048600) |
| v. | |
| LANDRY BOULLARD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Affirmed with directions.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

In 2010 a jury convicted Landry Boullard of attempted murder and found true an allegation he attempted to commit the murder willfully, deliberately, and with premeditation. In 2022 Boullard filed a petition for resentencing under Penal Code former section 1170.95[1] (now section 1172.6), alleging that he was convicted of attempted murder under the natural and probable consequences doctrine and that he could not be convicted of attempted murder under current law. The superior court found Boullard failed to state a prima facie case for relief and denied the petition without issuing an order to show cause. We affirm the order denying the section 1170.95 petition, deny Boullard's request under section 1172.75 to strike four prior prison term enhancements, and direct the superior court to correct a clerical error in the abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *A Jury Convicts Boullard of Attempted Murder and Other Crimes*

In February 2010 James Kofahl, his wife, and three relatives went to see a movie in a theater. Boullard sat with a woman and a child in the row in front of Kofahl and his family. During the movie, the woman with Boullard answered her cell phone and began talking. Kofahl said, "Would you please turn your cell phone off. We all paid good money to come see a movie." Boullard turned around and said something to Kofahl. Boullard

---

[1]  Statutory references are to the Penal Code.

2

stood up, walked up the aisle toward the rear of the theater, and a minute later walked back down the aisle and out of the theater through a front entrance. A second man also walked down the aisle and left the theater. The woman and child who had been sitting with Boullard got up and left.

Boullard reentered the theater holding a six-inch metallic object, ran toward Kofahl, and made a punching motion toward Kofahl's face. Justin Dowd, Kofahl's brother-in-law, pushed Boullard away from Kofahl, and Boullard fell over a row of seats. Dowd tackled Boullard, and Mark Albright, who was sitting in the row in front of Kofahl, grabbed Boullard. A second man jumped on Albright's back and, along with Albright and Boullard, fell onto a landing at the bottom of the steps. Albright's wife saw Boullard throw what looked like a meat thermometer on the floor. Boullard left the theater with the man who had jumped on Albright's back.

Law enforcement officers found a rectangular thermometer with a five- to six-inch metal rod in the aisle of the theater. The thermometer was the same kind of thermometer used by students in an air conditioning technician program Boullard had attended.

The attack left Kofahl unconscious and bleeding with a puncture wound in his neck above his clavicle. When Kofahl arrived at the emergency room, he was in a coma, having trouble breathing, and placed on life support. A neurosurgeon placed a drain in Kofahl's brain to relieve the pressure caused by extensive bleeding. Kofahl spent five weeks in the hospital and suffered permanent damage to his vision. Albright sustained a small puncture wound above his ear lobe. Dowd sustained a puncture wound underneath his arm.

Witnesses to the altercation identified Boullard on the theater's security camera footage. Four witnesses identified Boullard from a six-pack photographic lineup. Law enforcement searched Boullard's home and found a pistol locked in a safe.

A jury convicted Boullard on one count of attempted murder (§§ 187, subd. (a), 664), two counts of assault with a deadly weapon (§ 245, subd. (a)(1)), and one count of possession of a firearm by a felon (§ 12021, subd. (a)(1)). On the attempted murder conviction, the jury found true allegations that Boullard attempted to commit the murder willfully, deliberately, and with premeditation; that Boullard personally used a deadly or dangerous weapon (the thermometer); and that he personally inflicted great bodily injury. (§§ 664, subd. (a), 12022, subd. (b)(1), 12022.7, subds. (a) & (b).). Boullard admitted that he had one prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)) and one prior conviction for a serious felony within the meaning of section 667, subdivision (a)(1), and that he had served four prior prison terms within the meaning of former section 667.5, subdivision (b).

The trial court sentenced Boullard on his attempted murder conviction to a prison term of life with a minimum parole eligibility of 14 years (seven years, doubled under the three strikes law), plus 15 years for the enhancements (five years for the prior serious felony conviction, five years for inflicting great bodily injury causing the victim (Kofahl) to become comatose, four years for the prior prison term enhancements, and one year for using a deadly or dangerous weapon). The court also sentenced Boullard to consecutive determinate terms on his two convictions for assault with a deadly weapon (Albright and Dowd)

4

and his conviction for possession of a firearm by a felon.[2]  We affirmed the judgment.  (*People v. Boullard* (Mar. 19, 2012, B231333) [nonpub. opn.].)[3]

B.    *The Superior Court Denies Boullard's Petition Under Section 1172.6*

In January 2022 Boullard filed a petition for resentencing under section 1172.6.  In his petition Boullard alleged that he was convicted of attempted murder under the natural and probable consequences doctrine and that he could not now be convicted of attempted murder because of legislative changes to sections 188 and 189 effective January 1, 2019.  The superior court appointed counsel, and the People and Boullard filed briefs.

The superior court denied Boullard's petition, ruling Boullard had failed to establish a prima facie case for relief.  The court stated that, although the jury was instructed on the natural and probable consequences theory, the jury "found the attempted

_____

[2]    The trial court sentenced Boullard on one of his convictions for assault with a deadly weapon to eight years (the upper term of four years, doubled under the three strikes law), and on the other one to two years (one-third the middle term of three years, doubled).  On his conviction for possession of a firearm by a felon, the court sentenced Boullard to 16 months (one-third the middle term of two years, doubled).  Thus, Boullard's aggregate sentence was life in prison with a minimum parole eligibility of 14 years, plus 26 years four months, which is relevant to Boullard's argument under section 1172.75.

[3]    In his direct appeal Boullard did not challenge any aspect of his attempted murder conviction.  He argued only substantial evidence did not support one of his convictions for assault with a deadly weapon.

murder was committed with premeditation and deliberation" and that "a person could not be found to have acted with premeditation and deliberation in the absence of express malice and/or specific intent to kill." Boullard timely appealed.

## DISCUSSION

A. *Section 1172.6*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)[4] Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule. (*Gentile*, at pp. 842-843.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the legislative changes to the definitions of the crime. (See *People v.*

---

[4] The Legislature later renumbered section 1170.95 to section 1172.6. (See *People v. Strong, supra*, 13 Cal.5th at p. 708, fn. 2.)

6

*Strong, supra,* 13 Cal.5th at p. 708; *Lewis, supra,* 11 Cal.5th at p. 957; *People v. Gentile, supra,* 10 Cal.5th at p. 843.)  Effective January 1, 2022, the Legislature amended section 1172.6 to apply to individuals convicted of "attempted murder under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); see *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested.  (*Lewis, supra,* 11 Cal.5th at pp. 962-963; see § 1172.6, subd. (b)(1)(A), (3).)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'"  (*Lewis, supra,* 11 Cal.5th at p. 971.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Ibid.*; see *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis,* at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)  But "[i]f the record of conviction

7

""contain[s] facts refuting the allegations made in the petition,'"" . . . then the trial court is justified in rejecting them." (*Eynon*, at p. 975; see *Lewis*, at p. 971.) We review de novo an order denying a petition under section 1172.6 petition without issuing an order to show cause. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

Where the petitioner makes the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*; see *People v. Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

B.      *Boullard Is Ineligible for Relief Under Section 1172.6 on His Attempted Murder Conviction*

Boullard argues he made a prima facie showing he was eligible for resentencing under section 1172.6 because the jury was instructed on the natural and probable consequences theory. The People argue that, because the jury found true the allegation Boullard attempted to murder Kofahl willfully, deliberately, and with premeditation, the jury necessarily found Boullard acted with intent to kill and therefore is ineligible for relief under section 1172.6. The People are correct.

8

### 1. *Relevant Proceedings in the Trial Court*

The trial court instructed the jury on attempted murder with CALCRIM No. 600: "The defendant is charged . . . with attempted murder. To prove that the defendant is guilty of attempted murder, the People must prove that: the defendant took a direct but ineffective step toward killing another person; and the defendant intended to kill that person."

The trial court instructed the jurors that they could convict Boullard of a crime either as a perpetrator or as someone who aided and abetted a perpetrator who directly committed the crime. The court instructed the jurors that they could find Boullard guilty as an aider and abettor if they found he knew the perpetrator intended to commit the crime, knew of the perpetrator's unlawful purpose, and specifically intended to and did aid, facilitate, promote, encourage, or instigate the perpetrator's commission of a crime.

The trial court also instructed the jury on the natural and probable consequences doctrine with CALCRIM No. 402. The court told the jurors that, to find Boullard guilty of attempted murder under that doctrine, they had to find Boullard was guilty of assault with a deadly weapon; during the commission of assault with a deadly weapon a coparticipant in that crime committed attempted murder;[5] and under the circumstances a reasonable person in Boullard's position would have known attempted murder was a natural and probable consequence of assault with a deadly weapon.

---

[5] CALCRIM No. 402 states: "A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander." (See *People v. Smith* (2014) 60 Cal.4th 603, 612.)

9

Regarding the allegation Boullard attempted to commit the murder willfully, deliberately, and with premeditation, the trial court instructed the jury with CALCRIM No. 601: "If you find the defendant guilty of attempted murder . . . , you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the consequences for and against his choice and, knowing the consequences, decided to kill. The defendant premeditated if he decided to kill before acting."

During closing argument, counsel for Boullard discussed the attempted murder charge and argued that Boullard did not intend to kill Kofahl and that Boullard did not premeditate or deliberate. Counsel conceded, however, Boullard was the person who attacked Kofahl. Counsel for Boullard acknowledged he had stated during his opening statement "it was another person that did it," but counsel conceded "the evidence didn't show that. It came out to be that, based on the testimony, that it was Mr. Boullard that attacked the victim in this case, which was Mr. Kofahl."[6]

### 2. *The Jury's True Finding Boullard Acted Willfully, Deliberately, and with Premeditation Precludes Him from Relief*

Because the jury found Boullard attempted to commit the murder willfully, deliberately, and with premeditation, the jury

---

[6] Counsel for Boullard argued another man, not Boullard, attacked Dowd and Albright (the two counts of assault with a deadly weapon).

necessarily found Boullard had the intent to kill. The jury instruction made clear that, to find the allegation true, the jury had to find the People proved beyond a reasonable doubt "the attempted murder was done willfully." The jury instruction further stated: "*The defendant* acted willfully if he intended to kill when he acted." Because the instruction referred to the "defendant," not the "attacker" (e.g., CALCRIM No. 3474; CALJIC No. 9.50) or "would-be slayer" (e.g., CALJIC No. 8.67), and Boullard was the only defendant, the jury found Boullard intended to kill. And as discussed, Boullard is not eligible for relief under section 1172.6 if he acted with the intent to kill. (§ 188, subd. (a)(1) & (3); see *People v. Jenkins* (2021) 70 Cal.App.5th 924, 934 (*Jenkins*) ["a defendant is ineligible for relief if the trier of fact found beyond a reasonable doubt that the defendant intended to kill"].) This is true even if the jury disregarded counsel for Boullard's concession Boullard was Kofahl's actual attacker and considered whether Boullard was guilty of attempted murder as an aider and abettor: Because the jury found Boullard acted willfully in committing attempted murder (i.e., intended to kill), the jury could not have convicted Boullard on a natural and probable consequences theory. (Cf. *Williams*, *supra*, 86 Cal.App.5th at p. 1256 ["By their true finding of the drive-by shooting special circumstance, the jurors defined the theory of the crime and found [the defendant] had acted with the intent to kill, the '"functional equivalent" of express malice.'"]; *People v. Medrano* (2021) 68 Cal.App.5th 177, 183-184 ["By convicting appellant of conspiracy to commit first degree murder," the jury "in effect found that appellant was a direct aider and abettor of the killings" because the jury instruction required the jury to find he acted "'with the specific intent to

11

agree to commit . . . first degree murder and with the further specific intent to commit such offense.'"].)

Boullard's reliance on *People v. Montes* (2021) 71 Cal.App.5th 1001 (*Montes*) is misplaced. In *Montes* a jury convicted the defendant of attempted murder and found true the allegation the attempted murder was committed willfully, deliberately, and with premeditation. (*Montes*, at p. 1003.) As here, the trial court in *Montes* instructed the jury on the natural and probable consequences doctrine. (*Id*. at p. 1008.) But that is where the similarities end. In *Montes* the defendant was prosecuted as an aider and abettor, not as a perpetrator of the attempted murder. During closing argument, the prosecutor "referred to the natural and probable consequences doctrine, provided the jury with examples of what natural and probable consequences could arise in [the defendant's] circumstances, and argued that a reasonable person in [the defendant's] shoes would know that an assault may lead to an attempted murder." (*Montes*, at p. 1007.) The superior court in *Montes* denied the defendant's petition under section 1172.6 without issuing an order to show cause, ruling, among other things, the defendant "'possessed the intent to kill or the jury could not have convicted him of attempted murder.'" (*Montes*, at p. 1004.) The court in *Montes* reversed, holding the jury found "the perpetrator (not [the defendant]) intended to kill and the perpetrator's attempted murder was a natural and probable consequence of [the defendant's] intent to participate in the target offense of assault." (*Id*. at p. 1008.) It does not appear the trial court in *Montes* instructed the jury on a theory of attempted murder that

12

required the jury to find the defendant (rather than the perpetrator) intended to kill.[7]

Here, in contrast, the trial court's instruction (CALCRIM No. 601) did not allow the jury to find the allegation true if the jury found someone other than Boullard intended to kill.  In defining willfulness, deliberation, and premeditation, the trial court's instruction referred only to "the defendant": "The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the consequences for and against his choice and, knowing the consequences, decided to kill.  The defendant premeditated if he decided to kill before acting."  By finding Boullard acted willfully, deliberately, and with premeditation, the jury necessarily found *the* defendant (Boullard) "intended to kill when he acted."  And as discussed, counsel for Boullard conceded Boullard was not an aider and abettor, but the actual attacker. (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 13 [record of conviction includes closing arguments]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 102 [same].)

Nor does *Jenkins*, *supra*, 70 Cal.App.5th 924, on which Boullard also relies, support Boullard.  In *Jenkins* the defendant was convicted of second degree murder and kidnapping.  The People argued that the defendant was ineligible for relief under section 1172.6 because the trial court, by declining under section 654 to stay execution of the sentence on the kidnapping

---

[7]     The opinion in *Montes* does not reveal whether the court instructed the jury on direct aiding and abetting (in addition to natural and probable consequences), nor does the opinion describe the instruction on willfulness, deliberation and premeditation.

conviction, necessarily found the defendant "'formed a separate intent and objective for each offense'" and "implicitly found that [the defendant] formed an intent to aid and abet murder—that is, an intent to kill." (*Jenkins*, at p. 934.) The court in *Jenkins* held the trial court's implied finding under section 654 did not preclude relief under section 1172.6 because the trial court made that finding by a preponderance of the evidence, not beyond a reasonable doubt. Here, of course, the jury found beyond a reasonable doubt Boullard attempted to commit murder willfully, deliberately, and with premeditation.[8]

Boullard also contends that the superior court, in concluding the jury did not rely on the natural and probable consequences theory, engaged in improper judicial factfinding. But the court did not engage in any factfinding. The court did not weigh the evidence or make credibility determinations; instead, it based its decision on the jury instructions and the verdict. (See *Lewis*, *supra*, 11 Cal.5th at p. 971 [court may reject allegations in the section 1172.6 petition if they are refuted by facts in the record of conviction].) Nor did the superior court, as Boullard asserts, rely on our opinion in Boullard's direct appeal "to establish the facts of the case." In denying Boullard's petition, the superior court recited the factual summary from our prior opinion, but the court did not refer to any part of that factual

---

[8] The court in *Jenkins* also stated that, although the jury's true finding on a witness-killing special circumstance (which requires an intent to kill) under section 190.2 ordinarily would render a defendant ineligible for relief under section 1172.6, the finding did not preclude relief in that case because the trial court struck it. (*Jenkins*, *supra*, 70 Cal.App.5th at p. 935.)

14

summary in making its ruling, and Boullard does not point to any fact the superior court relied on in denying his petition.

The jury's true finding on the allegation Boullard acted willfully, deliberately, and with premeditation established as a matter of law Boullard intended to kill, and excluded the possibility the jury relied on the natural and probable consequences doctrine. Because the jury did not impute malice to Boullard or convict him under a now-invalid theory, Boullard can "presently be convicted of murder" (§ 1172.6, subd. (a)(3)), notwithstanding the changes to sections 188 and 189. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864, 867-868 [defendant was "ineligible for relief under section [1172.6] as a matter of law" because the jury did not convict him under a theory of liability affected by the Legislature's changes to sections 188 and 189].)

### C.   *Boullard Is Not Entitled to Resentencing Under Section 1172.75 in This Proceeding*

Boullard asks us to strike the four one-year prior prison term enhancements (former § 667.5, subd. (b)) and direct the superior court to resentence him under section 1172.75. Boullard may be eligible for resentencing under section 1172.75, but he cannot obtain that relief in this appeal.

"Prior to January 1, 2020, section 667.5, subdivision (b), required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380.) In 2020 the Legislature amended section 667.5, subdivision (b), to limit the enhancement to prior prison terms for

sexually violent offenses.  (§ 667.5, subd. (b); Stats. 2019, ch. 590, § 1; *Burgess*, at p. 380.)  In 2021 Senate Bill No. 483, which added section 1171.1 (later renumbered as section 1172.75), made the change retroactive.  (Stats. 2021, ch. 728, §§ 1, 3; Stats. 2022, ch. 58, § 12.)  Section 1172.75, subdivision (a), provides:  "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid."  (See *People v. Monroe* (2022) 85 Cal.App.5th 393, 399.)

Boullard argues, the People concede, and we agree Boullard's prior prison term enhancements are "legally invalid" under section 1172.75, subdivision (a), because the trial court did not impose them for prior convictions for sexually violent offenses.  But Boullard provides no authority for his request for resentencing on these enhancements in an appeal from an order denying a petition under section 1172.6.

Instead, section 1172.75 provides a procedure for Boullard and other defendants to seek resentencing on convictions that include these no-longer-valid enhancements.  The Department of Corrections and Rehabilitation and the county correctional administrator must first identify individuals currently serving terms that include such an enhancement and provide the court with their names, dates of birth and case numbers.  (§ 1172.75, subd. (b).)  "Upon receiving the information," if the court determines a judgment includes an invalid enhancement, "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c); see *People v. Monroe*, *supra*, 85 Cal.App.5th at p. 399.)  Section 1172.75 prescribes two timelines for this

process. For "individuals who have served their base term and any other enhancement and are currently serving a sentence based on the [now-invalid] enhancement," the deadline for review and resentencing was October 1, 2022. (§ 1172.75, subd. (c)(1).) For individuals like Boullard, who are not yet serving time on an invalid enhancement, the deadline is December 31, 2023. (§ 1172.75, subd. (c)(2).)

Boullard was sentenced in 2011 to an aggregate prison term of the equivalent of 40 years four months to life. Under section 1172.75, subdivision (c)(2), he is scheduled to be resentenced within seven months—decades before he is due to begin serving any time for the four one-year prior prison term enhancements. Boullard argues we should order the superior court to resentence him now under section 1172.75, subdivision (c)(2), "in the interests of judicial economy and efficiency." We see no reason to allow Boullard to circumvent the statutory process and potentially cut in line in front of other defendants who, unlike Boullard, will soon be serving sentences based on now-invalid enhancements. (See *People v. Burgess*, *supra*, 86 Cal.App.5th at pp. 382-383 ["the Legislature's purpose in staggering the schedule [was] to minimize the impact on trial courts, while ensuring that those inmates currently serving time on the invalid enhancements are prioritized for relief, so they do not lose the benefit of the ameliorative change in the law"].)

D. *The Superior Court Should Correct a Clerical Error in the Abstract of Judgment*

Boullard asserts, the People concede, and we agree the abstract of judgment contains a clerical error. Boullard was convicted of possession of a firearm by a felon (former section 12021, subdivision (a)(1), now section 29800, subdivision

17

(a)(1)), but the abstract of judgment incorrectly cites section 12001, subdivision (a)(1).  The trial court should correct that mistake.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court has the authority to correct a clerical error in an abstract of judgment at any time]; *People v. Gobert* (Mar. 22, 2023, D080018) 89 Cal.App.5th 676, ___ [2023 WL 2592369, p. 7] [same].)[9]

---

[9]     In his opening brief, Boullard contended the abstract of judgment contained a second error regarding an enhancement on his conviction for attempted murder, but in his reply brief Boullard abandoned that argument.

# DISPOSITION

The order denying Boullard's petition under section 1172.6 is affirmed. The trial court is directed to correct the abstract of judgment to state Boullard was convicted of possession of a firearm by a felon under former section 12021, subdivision (a)(1), now section 29800, subdivision (a)(1), and to send a corrected abstract of judgment to the Department of Corrections and Rehabilitation.

SEGAL, J.

We concur:

PERLUSS, P. J.

ESCALANTE, J.*

---

\*    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.